**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

ED MEINTZER,

    Plaintiff,

vs.                                                               No. CIV 07-151 JB/ACT

STATE OF NEW MEXICO
HUMAN SERVICES DEPARTMENT,

    Defendant.

**MEMORANDUM OPINION AND ORDER**

    **THIS MATTER** comes before the Court on: (i) Plaintiff Ed Meintzer's Emergency Motion for Temporary Injunction-Restraining Order Time is of the Essence, filed February 20, 2007 (Doc. 3)("Motion for Injunction"); and (ii) Meintzer's Request for Emergency Hearing, filed February 20, 2007 (Doc. 4). The Court held a hearing on these two motions on March 1, 2007. The primary issues are: (i) whether the Court should grant Meintzer a hearing on his motion for injunctive relief; and (ii) whether the Court should grant Meintzer access to certain property currently in the possession of Defendant State of New Mexico Human Services Department ("HSD") and temporarily order HSD to cease from certain activities that Meintzer alleges are in violation of his civil rights. Because the Court believes that the nature of the relief Meintzer seeks makes a hearing appropriate, the Court held a hearing on March 1, 2007. Because the Court does not believe, however, that, based on the record before it, Meintzer has met the criteria necessary for the Court to order injunctive relief, or that injunctive relief is necessary to preserve the status quo between the parties pending trial, the Court will not grant an injunction or restraining order.

**FACTUAL BACKGROUND**

Meintzer's Complaint and his emergency motion raise factual questions that implicate the Court's jurisdiction over this matter and relate to the likelihood that Meintzer will prevail on the merits in this case. In reaching its decision on Meintzer's motion, the Court has carefully reviewed not only Meintzer's motion, but the facts described and the claims raised in the Complaint.

**1.    Meintzer's Complaint.**

Meintzer has been employed as a staff attorney, an Attorney O, for HSD's Child Support Enforcement Division ("CSED") since October 1999. See Complaint for Damages and Request for Jury Trial ¶ 1, at 1, filed February 15, 2007 (Doc. 1)("Complaint"). Meintzer alleges that he has been the victim of sex, race, age, and retaliatory discrimination "almost from the time [he] arrived at CSED." Id. ¶ 3, at 1. Meintzer contends that disparities in compensation between himself and younger, less experienced, and female attorneys demonstrate a pattern of discriminatory treatment. See id. ¶¶ 15-16, at 2.

Meintzer characterizes his attorney position as similar to those attorneys to whom he compares himself, and asserts that he has been more productive "than most of the other [a]ttorneys statewide." Id. ¶ 21, at 5. He represents that he has not been promoted despite outperforming colleagues who have received promotions. See id. ¶ 25, at 5-6.

Meintzer maintains that, in or about the summer of 2002, he discovered that CSED's formula for the computation of post-judgment interest, outlined in Rule 8.50.111.12 NMAC, was inconsistent with N.M. Stat. Ann. § 40-4-7.3. See Complaint ¶ 29, at 6. Meintzer represents that, because he believed presenting a delinquency calculation based on CSED's formula constituted intentional fraud on the court, he exercised his First Amendment rights and informed Region III County Director,

Gerry Smith, that he refused to follow the policy. See id. ¶¶ 31-32, at 6. Meintzer asserts that, in response to his protestations regarding CSED's interest policy, HSD retaliated against him by assigning him the most productive CSED workers and the most complex, non-child support, federal cases. See id. ¶ 43, at 7. He also represents that his immediate supervisor, Pam Garcia, and Theresa Baca-Storey followed him to a non-CSED hearing, and submitted false reports that he represented a client contrary to an order that Regional Office Manager, Thomas Spahr, had given prohibiting outside representation. See id. ¶ 48, at 8.

On December 9, 2002, Regional Office Manager, Larry Trujillo, and Smith presented Meintzer with a Notice of Contemplated Action alleging outside employment, insubordination, and falsifying timesheets. See id. ¶¶ 50-51, at 8. Meintzer expressed his opinion that HSD's allegations in its notice were pretexts for First Amendment retaliation and discrimination in response to his refusal to follow CSED's interest calculation policy. See id. ¶ 52, at 8. At the retention hearing on January 23, 2003, Meintzer admitted he had performed outside employment for years, and maintained that he had done so with the knowledge of Spahr and of other CSED employees. See id. ¶ 54, at 8. Meintzer also requested that he be transferred, because he believed that, if he was not transferred, he would be retaliated against after being reinstated. See id. ¶ 57, at 9.

Meintzer contends that, after being reinstated in January 2003, he was subjected to a Letter of Instruction that required him to contact the Managing Attorney or the County Director whenever he left the building. See id. ¶ 59, at 9-10. Meintzer states that, when he learned that other similarly situated employees were not subject to the same protocol, he informed the County Director that he would not comply with the instructions. See id. ¶ 62, at 10. Meintzer also contends that, after his reinstatement, he was once again assigned the heaviest caseload among the attorneys in Region III.

See id. ¶ 63, at 10.

Meintzer states that, on or about August 22, 2003, he applied for a position as CSED General Counsel, an Attorney A position in Albuquerque at Region III, and for a Managing Attorney position in Las Cruces, New Mexico. See id. ¶ 69, at 10. Meintzer represents that he was subsequently interviewed at a meeting, which he understood to be for all three positions, but that he was only asked questions regarding the CSED General Counsel position. See id. ¶¶ 70, 72-73, at 10-11. The CSED General Counsel position was awarded to Lila Bird, a female candidate whom, upon information and belief, Meintzer notes to be younger and less experienced than himself. See id. ¶¶ 74-75, at 11.

At approximately the same time, Meintzer requested and was granted leave to cope with stress issues related to CSED's alleged retaliation against him. See id. ¶ 78, at 11. When he returned from this leave, HSD Chief Counsel, Paul Ritzma, notified Meintzer that he was going to be promoted to the Attorney A position in Albuquerque, but allegedly stated that "[Meintzer] was going to have to work extremely hard to prove all of the people wrong who did not think that [Meintzer] deserved the promotion." Id. ¶¶ 79-80, at 11-12. Because of this statement, his perception that he was not asked any questions regarding the Attorney A position at his interview, and "office rumors" suggesting that there may have been improprieties in the interview process, Meintzer refused the promotion. Id. ¶¶ 83-86, at 12. The Attorney A position was awarded to Jan Schoenhaus, an attorney that Meintzer describes as younger, less experienced, and less productive than himself. See id. ¶¶ 87-88, at 12.

On or about March 12, 2004, Meintzer met with Garcia, Bird, and Ritzma to discuss his perception that caseloads within Region III were disproportionately distributed; during this meeting,

Meintzer also expressed his concern that Garcia could not objectively perform his evaluations and effectively supervise his work without retaliating against him. See id. ¶¶ 93-95, at 13. Meintzer states that, although his request that a manager other than Garcia supervise him was refused, Ritzma promised at the March 12, 2004 meeting that Meintzer would receive a raise to bring his salary in line with some newly hired attorneys who were in fact making more money than Meintzer. See id. ¶¶ 96-97, at 13. On April 9, 2004, Meintzer sent an e-mail to HSD Secretary Pamela Hyde and to the Governor's Chief of Staff, Richard Guay, indicating that his workload had not been reduced, that he had not received the promised raise, and alleging that Ritzma had been dishonest during the March 12, 2004 meeting. See id. ¶ 103, at 14.

In July 2004, Meintzer applied for a new Attorney O position, because he had still not received the raise Ritzma had promised him and new Attorney O's were being hired at wages above his. See id. ¶ 107, at 14. Bird informed Meintzer that he would not be interviewed for an Attorney O position, because it would constitute a lateral transfer. See id. ¶ 108, at 14.

In January 2005, Meintzer interviewed for two Attorney A positions that had become available in Albuquerque. See id. ¶ 111, at 14. Ritzma notified Meintzer that he was not selected for either Attorney A position, and that Ritzma had selected Rachelle Klump and Stephen Klump, a married couple, for the two positions. See id. ¶¶ 115, 120, at 15. Meintzer states that each of the Klumps is younger and less experienced than himself. See id. ¶ 121, at 15. Shortly after notifying Meintzer that the Klumps had been selected, Meintzer states that Ritzma canceled both promotions, because one of the attorneys expected to vacate an Albuquerque Attorney A position decided to remain in her position. See id. ¶ 123, at 16.

On May 12, 2005, after filing a discrimination claim with the Equal Employment Opportunity

Commission ("EEOC"), Meintzer and Ritzma reached a mediated settlement agreement. See id. ¶ 128, at 16. The agreement stated that Meintzer was to receive an equity raise to the mid-point for his position and that Ritzma would not take any adverse employment actions against Meintzer. See id. ¶¶ 129, 132, at 16. Meintzer asserts that he may not have received a raise to the appropriate level and that Ritzma took an adverse employment action when he appointed Robert Thomas to an open Region VII Attorney A position without following the interview process that department policy mandated. See id. ¶¶ 129, 133, at 16-17. Meintzer contends that Ritzma appointed Thomas, an attorney slightly older than Meintzer, in an attempt to mitigate Meintzer's anticipated age discrimination claim. See id. ¶ 141, at 17.

Meintzer contends that, in July 2006, Ritzma reassigned the two vacant Albuquerque Attorney A positions to the Las Vegas, New Mexico and Los Lunas, New Mexico offices and demoted the Los Lunas position to an Attorney O position. See id. ¶¶ 154, 159, at 19. Five months later, Ritzma created or transferred two new Attorney A positions -- one to the Los Lunas office and another to the Alamagordo, New Mexico office. See id. ¶ 161, at 20. Meintzer argues that not filling Attorney A positions in the Albuquerque office constitutes an adverse employment action. See id. ¶ 167, at 20.

### 2. Administrative Remedies.

Meintzer states that he has filed at least four administrative claims for relief from discrimination and retaliation with the EEOC: (i) a claim alleging discrimination and retaliation filed on June 5, 2003, see id. ¶ 68, at 10; (ii) a claim alleging retaliation, inequitable workload, age discrimination, and failure to promote filed sometime between January and May 2005, see id. ¶ 127, at 16; (iii) a claim alleging intentional retaliation filed sometime between May 2005 and July 2006,

see id. ¶¶ 150-151, at 18; and (iv) a claim alleging discrimination and retaliation filed on February 12, 2007, see Motion for Injunction ¶ 1, at 1. Meintzer has not described the status or the outcome of any of these filings in his Complaint or his Motion for Injunction, and he has not attached a right-to-sue letter to any of his filings. At the hearing on this motion, however, Meintzer stated that these proceedings were "still pending," but indicated that he had received a right-to-sue letter for his Title VII claims. See Transcript of Hearing at 13:6-7; 13:17-20 (Meintzer)(taken March 1, 2007)("Transcript").[1]

### 3. Meintzer's Request for Injunctive Relief.

On February 13, 2007, Meintzer was served a Notice of Contemplated Action by hand delivery. See Defendant's Response to Plaintiff's Emergency Motion for Temporary Injunction Restraining Order Time is of the Essence, filed February 28, 2007 (Doc. 7)("HSD's Response"). The Notice alleges that Meintzer inappropriately used state property and resources for personal gain, and that he falsified timesheets. See HSD's Response, Exhibit 1, Letter from Paul Ritzma and Corinne Jameson to Ed R. Meintzer (dated February 13, 2007)("Notice of Contemplated Action"). Among other charges, the Notice of Contemplated Action charges that Meintzer repeatedly used his state-provided Westlaw account to conduct legal research unrelated to his job duties. See id. at 3-6. Meintzer admits that he used Westlaw for personal reasons, but counters that he was forced to "educate and defend himself against Defendant HSD [o]fficials' intentional civil rights violations." Motion for Injunction ¶ 4, at 1. See Transcript at 9:25-10:1 (Meintzer). Meintzer also admits that he has engaged in outside legal employment, but contends that he did so with the knowledge of his

---

[1] The Court's citations to the transcript of the hearing refer to the Court Reporter's original, unedited version. Any final transcript may contain slightly different page and/or line numbers.

supervisors. See Transcript at 7:21-23 (Meintzer).

In addition to serving Meintzer the Notice of Contemplated Action, HSD also placed him on administrative leave with pay. See HSD's Response, Exhibit 2, Letter from Corinne Jameson to Ed Meintzer (dated February 13, 2007). Meintzer was instructed not to enter HSD property, not to have contact with any HSD employees at any time either during or after work hours, and to surrender his office keys, HSD identification badge, and other department property. See id.

Subsequent to receiving the Notice of Contemplated Action, Meintzer requested that he be allowed to return to his office to retrieve his personal property and information from his state-provided computer. See Motion for Injunction ¶ 6, at 2; HSD's Response at 2. Meintzer states that his office contains documents related to personal financial matters, his personal calendars, and evidence he has collected related to the alleged civil rights violations underlying his lawsuit in federal court. See Motion for Injunction ¶¶ 7-8, 11, at 2. Meintzer also contends that the hard drive of his state computer contains information regarding this lawsuit that the attorney-client privilege and the attorney work-product doctrine protect. See id. ¶ 10, at 2.

HSD denied Meintzer's request to retrieve his belongings. See Motion for Injunction ¶ 6, at 2; HSD's Response at 2. On February 22, 2007, however, HSD's counsel contacted Meintzer and informed him that his personal property would be inventoried and returned promptly. See HSD's Response, Exhibit 4, Affidavit of Alfred D. Creecy ¶ 7, at 2 ("Creecy Affidavit"). HSD represents that a team of third-party investigators were retained to identify Meintzer's personal property, inventory and package the items, and return them to him. See HSD's Response at 2; Transcript at 26:9-17 (Walz). HSD anticipates that the collection of Meintzer's items should be completed and the items returned by March 1, 2007. See HSD's Response at 2-3; Transcript at 26:16-17 (Walz).

-8-

HSD also represents that it would be willing to produce an index of his hard drive's contents to Meintzer, see Transcript at 27:22-28:2 (Walz), and that it will work promptly with Meintzer to address any privilege issues that may exist with reference to data contained in the hard drive, see id. at 45:21-25 (Walz).

## PROCEDURAL BACKGROUND

Meintzer filed his Complaint against HSD on February 15, 2007. Meintzer represents that he will soon amend his Complaint to add HSD Personnel Director, Corrine Jameson, as a defendant, in her individual capacity, as well as several other HSD officials. See Motion for Injunction ¶ 21, at 3. As the statutory basis for his Complaint, Meintzer refers to violations of 42 U.S.C. §§ 1983, 1985 and 2000e-3, and of the New Mexico Human Rights Act, N.M. Stat. Ann. § 28-1-7(I)(1)-(3). See Complaint ¶ 158, at 19.

On February 20, 2007, Meintzer filed this motion requesting injunctive relief. Although Meintzer states that he unsuccessfully attempted to contact several defendants regarding the motion, and Meintzer spoke to Mr. Alfred D. Creecy, an attorney at the firm of HSD's counsel, on February 22, 2007, see Creecy Affidavit ¶ 3, at 1, HSD's counsel represents that it was unaware of the motion for injunctive relief until Meintzer sent the motion via telefacsimile on February 27, 2007, see HSD's Response at 2. HSD filed its Response in opposition to Meintzer's motion on February 28, 2007. Meintzer's Motion for Injunction requests seven forms of injunctive relief: (i) that the Court order HSD to provide him with a copy of his hard drive; (ii) that the Court order HSD to place his unaltered hard drive into evidence or submit it to a disinterested third party; (iii) that Meintzer be allowed to retrieve his personal belongings and evidence from his office before they are lost or destroyed; (iv) that, if the Court allows a retention hearing in association with the Notice of

Contemplated Action that HSD issued to Meintzer, the Court order that the New Mexico State Personnel Office conduct the hearing; (v) that HSD be prohibited from firing Meintzer without good cause and without due process under color of law; (vi) that Meintzer be permitted to copy HSD personnel records in accordance with the New Mexico Inspection of Records Act and discovery rules; and (vii) other relief the Court deems equitable. See Motion for Injunction at 4.

## LAW ON PRE-TRIAL INJUNCTIVE RELIEF

The Supreme Court of the United States and the United States Court of Appeals for the Tenth Circuit have explained that "[t]he purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." Univ. of Tex. v. Camenisch, 451 U.S. 390, 395 (1981). See Keirnan v. Utah Transit Auth., 339 F.3d 1217, 1220 (10th Cir. 2003)("In issuing a preliminary injunction, a court is primarily attempting to preserve the power to render a meaningful decision on the merits.")(quoting Tri-State Generation & Transmission Ass'n v. Shoshone River Power, Inc., 805 F.2d 351, 355 (10th Cir. 1986)). The Tenth Circuit has emphasized that "a preliminary injunction is an extraordinary remedy, and thus the right to relief must be clear and unequivocal." Nova Health Sys. v. Edmondson, 460 F.3d 1295, 1298 (10th Cir. 2006)(quoting Schrier v. Univ. of Colo., 427 F.3d 1253, 1258 (10th Cir. 2005))(internal brackets omitted).

To establish its right to a preliminary injunction, a moving party must demonstrate: (i) the injunction is necessary to prevent irreparable harm; (ii) there is a substantial likelihood the movant ultimately will prevail on the merits; (iii) the threatened injury to the movant outweighs any harm the proposed injunction may cause the opposing party; and (iv) the injunction would not be contrary to public policy. See Wyandotte Nation v. Sebelius, 443 F.3d 1247,1254-55 (10th Cir.

2006)(quoting Kiowa Indian Tribe of Okla. v. Hoover, 150 F.3d 1163, 1171 (10th Cir. 1998)). In the Tenth Circuit, if the moving party demonstrates that the first, third, and fourth factors "tip strongly in his favor, the test is modified," and the moving party "may meet the requirement for showing success on the merits by showing that questions going to the merits are so serious, substantial, difficult, and doubtful as to make the issue ripe for litigation and deserving of more deliberate investigation." Okla. ex rel. Okla. Tax Comm'n v. Int'l Registration Plan, Inc., 455 F.3d 1107, 1113 (10th Cir. 2006)(quoting Davis v. Mineta, 302 F.3d 1104, 1111 (10th Cir. 2002)).

Finally, a request for a preliminary injunction under rule 65 of the Federal Rules of Civil Procedure does not constitute an independent basis for federal jurisdiction. See Citizens Concerned for Separation of Church & State v. City of Denver, 628 F.2d 1289, 1299 (10th Cir. 1980)("[R]ule 65 does not confer either subject matter or personal jurisdiction on the court."). Rule 65 has "no relationship to or bearing on either the jurisdiction to exercise or the propriety of exercising the [court's] injunctive power." Id. At the preliminary injunction stage, the burden is on the moving party "to establish a reasonable probability of ultimate success on the issue of jurisdiction when the action is tried on the merits." Home-Stake Prod. Co. v. Talon Petroleum, C.A., 907 F.2d 1012, 1018 (10th Cir. 1990). In determining whether the moving party has met this burden, the Tenth Circuit has instructed that "'[r]easonable probability' is, to us, something less than 'preponderance of the evidence.'" Nat'l Union Fire Ins. Co. v. Kozeny, 19 Fed. Appx. 815, 822 (10th Cir. 2001).

## **ANALYSIS**

Meintzer contends that he has already suffered irreparable harm and that he will continue to suffer unless the Court awards the injunctive relief he requests. The principal basis of Meintzer's motion is that injunctive relief is necessary to safeguard the evidence and attorney work-product he

needs to defend himself against HSD's discriminatory treatment and to fairly prosecute this lawsuit. Because the Court does not believe, however, that the extraordinary remedy of injunctive relief is necessary to protect the interests with which Meintzer is concerned, the Court will deny his request for injunctive relief.

## I. MEINTZER HAS ESTABLISHED A REASONABLE PROBABILITY OF ULTIMATE SUCCESS ON THE ISSUE OF JURISDICTION WHEN THE ACTION IS TRIED ON THE MERITS.

The Court notes that, although Meintzer's Complaint makes reference to violations of various federal statutes -- it refers to 42 U.S.C. §§ 1983, 1985 and 2000e-3 -- the Complaint does not specifically contain any sections related to jurisdiction or explain on what jurisdictional basis Meintzer relies. Because subject-matter jurisdiction involves the court's power to hear a case, see Arbaugh v. Y & H Corp., 546 U.S. 500, 514 (2006), the Court must first address whether it has jurisdiction to enter an injunction in this matter.

HSD argues that, because it is a state entity and it is the only named defendant, sovereign immunity bars Meintzer's claims. See HSD's Response at 4. The Court agrees that, to the extent that Meintzer's claims are premised on 42 U.S.C. §§ 1983 and/or 1985, the Eleventh Amendment bars those claims. See Will v. Mich. Dep't of State Police, 491 U.S. 58, 66 (1989)("Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties."); Buck v. Utah Labor Comm'n, 73 Fed. Appx. 345, 347 (10th Cir. 2003)("Congress did not abrogate the states' Eleventh Amendment immunity when it enacted 42 U.S.C. § 1985.")(citing Ellis v. Univ. of Kan. Med. Ctr., 163 F.3d 1186, 1196 (10th Cir. 1998)). To the extent that Meintzer's Complaint raises a cause of action under Title VII of the Civil Rights Act of 1964, 42

U.S.C. §§ 2000e-2000e-17, Congress has abrogated the State's sovereign immunity pursuant to its power under section five of the Fourteenth Amendment, and HSD is a proper party. See Fitzpatrick v. Bitzer, 427 U.S. 445, 448-49 (1976)(holding Title VII authorizes federal courts to award money damages and attorneys' fees in favor of a private individual against a state government found to have subjected him to employment discrimination on the basis of race, color, religion, sex or national origin); Crumpacker v. Kan. Dep't of Human Res., 338 F.3d 1163, 1170 (10th Cir. 2003)(holding Congress properly exercised its abrogation power in enacting Title VII's prohibition against discriminatory retaliation).

Meintzer has referenced 42 U.S.C. § 2000e-3 in his Complaint, see Complaint ¶ 158, at 19, and the Court believes that his pleadings allege discriminatory and retaliatory conduct that may be cognizable under Title VII. At the hearing on this motion, Meintzer also represented that the EEOC issued him a right-to-sue letter on his Title VII claims. See Transcript at 13:17-20 (Meintzer). At this stage in the proceedings, Meintzer has the burden of proving only that he has a reasonable probability of ultimate success on the issue of jurisdiction. The Tenth Circuit has explained that this standard is "something less than 'preponderance of the evidence.'" Nat'l Union Fire Ins. Co. v. Kozeny, 19 Fed. Appx. at 822. The Court concludes that, with respect to Meintzer's Title VII claim, he has satisfied his burden, and the Court will assess the merits of his request for a preliminary injunction.

## II. MEINTZER HAS NOT DEMONSTRATED THAT HIS RIGHT TO INJUNCTIVE RELIEF IS CLEAR AND UNEQUIVOCAL.

The Tenth Circuit has emphasized that "a preliminary injunction is an extraordinary remedy, and thus the right to relief must be clear and unequivocal." Nova Health Sys. v. Edmondson, 460

F.3d at 1298. The Court has carefully analyzed Meintzer's Complaint, his Motion for Injunction, and his oral argument at the hearing on this motion, and does not believe that Meintzer has met his burden to establish that the relief he requests is necessary to preserve the status quo between the parties pending trial. The Court will not grant the relief he requests.

### A. MEINTZER HAS NOT DEMONSTRATED THAT INJUNCTIVE RELIEF IS NECESSARY TO PREVENT IRREPARABLE HARM.

Meintzer suggests that he has already suffered irreparable harm. He states that he has incurred late charges, because he has not been allowed to retrieve bills and personal financial documents from his office and was therefore precluded from making timely payments on his bills. See Motion for Injunction ¶ 15, at 2; Transcript at 10:15-17 (Meintzer). He also contends that, if he is not allowed to access his personal property and secure his hard drive, he will not be able to properly defend himself in HSD's alleged attempt to fire him nor will he be able to successfully prosecute this lawsuit in federal court. See Motion for Injunction ¶¶ 16-18, at 3.

The Court does not agree with Meintzer that an injunction at this time is necessary to prevent irreparable harm. First, the Court notes any monetary charges Meintzer has already incurred are damages at law that a judgment for damages can remedy and which are not the proper subject of equitable relief. More important, when the Court examines the specific requests that Meintzer makes in his prayer for relief, it appears that requests one, two, three, and six relate to his request to have his property returned or to have access to HSD information or records. HSD represents that it anticipates returning Meintzer's personal property by March 1, 2007, and HSD's counsel has indicated that it will work with Meintzer to reach a suitable compromise regarding the information that might be stored on Meintzer's state-owned hard drive. Based on these representations, the Court

believes that requests one, two, three, and six are either already moot, or at most, are typical discovery matters that can be resolved in the course of discovery, and do not require injunctive relief.

At the hearing on this motion, HSD's counsel expressed doubt that the attorney-client privilege or attorney work-product doctrine protects information on the hard drive. HSD's counsel argued that the hard drive belonged to the state, not Meintzer, and therefore Meintzer had no reasonable expectation of privacy in the data he entered into the hard drive. See Transcript at 30:2-4 (Walz). Nevertheless, HSD's counsel indicated that he will be careful not to violate any privilege, if any exists, with respect to attorney-client communications or attorney work-product that the hard drive might contain. In any case, the Court will not order injunctive relief on the grounds that information on the hard drive may be privileged. Meintzer, as the proponent of the privilege, bears the burden of proving that the privilege is applicable. Based on the record before the Court, however, Meintzer has not convinced the Court that either the attorney-client privilege or the attorney work-product doctrine apply under these circumstances or that his right to injunctive relief on this ground is clear and unequivocal.

Meintzer's requests numbers four and five ask the Court to circumvent on-going administrative proceedings, and either order that the State Personnel Office conduct the proceedings or order HSD not to terminate him. The Court does not believe that this relief is necessary to avoid irreparable harm. The Court acknowledges Meintzer's concerns, but notes that these concerns are implicated in many employment cases. Under Title VII, and perhaps in state statutes, there are remedial provisions that allow plaintiffs to address perceived administrative abuses once the plaintiff has exhausted his administrative remedies.

In a related argument, HSD argues that, pursuant to Younger v. Harris, 401 U.S. 37, 43-44

(1971), the Court must abstain from exercising its jurisdiction until any administrative proceedings are complete. Meintzer counters that the Younger v. Harris abstention doctrine does not apply because the state administrative hearings are being conducted in bad faith to harass Meintzer.

The parties have not, either in their written motions or oral presentations, provided the Court with much information about the nature or the status of administrative proceedings -- either Meintzer's EEOC filings or HSD's retention hearings. At this time, the Court is unclear how many, if any, administrative proceedings are currently being conducted, and what the nature and status of any of these proceedings may be. Nevertheless, because the Court finds that Meintzer has not established that an injunction is necessary to prevent irreparable harm, and because it will not order injunctive relief, the Court need not decide at this time whether Younger v. Harris allows the Court to exercise its jurisdiction.

### B. MEINTZER HAS NOT ESTABLISHED A SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THE MERITS.

The Court believes that Meintzer's Complaint raises a number of factual disputes that prohibit the Court from finding that he is substantially likely to prevail on the merits in this action. Meintzer's Complaint and the Notice of Contemplated Action demonstrate a history of disagreements between Meintzer and numerous individuals at the HSD over the meaning and significance of certain actions and administrative policies. Meintzer has also admitted to defying HSD's policy regarding post-judgment interest calculations, using his state-issued Westlaw account for personal use, and accepting outside legal work in contravention of a written HSD policy. While the Court takes no position on the merits and will not comment on the likely outcome of this case, it believes each of these circumstances establishes a factual dispute that precludes a finding that

Meintzer is substantially likely to prevail on the merits. Indeed, the Court believes that it would only be in very rare circumstances, a plaintiff in a Title VII case could satisfy this criteria for a preliminary injunction.

### C.  THE COURT NEED NOT BALANCE THE PARTIES' INTERESTS OR DETERMINE WHETHER AN INJUNCTION WOULD BE CONTRARY TO PUBLIC POLICY.

Because the Court has already determined that injunctive relief is not necessary to prevent irreparable harm, and because the Court does not believe it can conclude that Meintzer is substantially likely to prevail on the merits in this case, the Court need not balance the interests of the parties in this case or determine whether any injunction would contravene public policy. Nevertheless, given the assurances that HSD has made, it appears that the interests of the parties and the public are best served by allowing the Title VII action to proceed as most other such cases do, and without preliminary injunctive relief. Accordingly, the Court will deny Meintzer's motion and will not order any injunctive relief.

**IT IS ORDERED** that Meintzer's Request for Emergency Hearing is granted. Meintzer's Emergency Motion for Temporary Injunction-Restraining Order Time is of the Essence is denied.

_____
UNITED STATES DISTRICT JUDGE

*Parties and counsel:*

Ed Meintzer
Albuquerque, New Mexico

    *Plaintiff Pro Se*

Jerry Walz
Walz and Associates
Cedar Crest, New Mexico

    *Attorneys for the Defendant*