IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ED MEINTZER,

        Plaintiff,

vs.                                             No. CIV-07-0151 JB/ACT

STATE OF NEW MEXICO HUMAN
SERVICES DEPARTMENT,

        Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendant State of New Mexico Human

Services Department's Motion to Dismiss Based on Eleventh Amendment Immunity and Failure to

Exhaust Administrative Remedies, filed March 13, 2007 (Doc. 12)("Motion to Dismiss").  The Court

held a hearing on this motion on May 21, 2007.  The primary issues are: (i) whether the Court should

dismiss Plaintiff Ed Meintzer's employment discrimination action against Defendant State of New

Mexico Human Services Department ("HSD") because HSD is immune from suit under the Eleventh

Amendment; (ii) whether the Court should dismiss Meintzer's lawsuit because he has failed to

exhaust his administrative remedies; and (iii) whether the Court should grant Meintzer leave to

amend his Complaint.  Because sovereign immunity bars some of Meintzer's claims against HSD,

but because he has exhausted his administrative remedies with respect to at least some of his

remaining claims, the Court will grant HSD's motion in part and deny it in part.

## FACTUAL BACKGROUND

Meintzer's Complaint raises factual questions that implicate the Court's jurisdiction over this

matter.  Rule 8(a)(1) of the Federal Rules of Civil Procedure requires that "a pleading which sets

forth a claim for relief . . . shall contain [] a short and plain statement of the grounds upon which the court's jurisdiction depends." Fed. R. Civ. P. 8(a)(1). His Complaint does not, however, contain any sections specifically related to jurisdiction or explain on what jurisdictional basis he relies. Nevertheless, because Meintzer is proceeding pro se, the Court has carefully reviewed the Complaint to determine the statutory basis of his claims and to determine if, liberally construed, his pleadings articulate claims that may be cognizable in federal court.

      1.    **Meintzer's Complaint.**

Meintzer has been employed as a staff attorney, an Attorney O, for HSD's Child Support Enforcement Division ("CSED") since October 1999. See Complaint for Damages and Request for Jury Trial ¶ 1, at 1, filed February 15, 2007 (Doc. 1)("Complaint"). Meintzer alleges that he has been the victim of sex, race, age, and retaliatory discrimination "almost from the time [he] arrived at CSED." Id. ¶ 3, at 1. Meintzer contends that disparities in compensation between himself and younger, less experienced, and female attorneys demonstrate a pattern of discriminatory treatment. See id. ¶¶ 15-16, at 2.

Meintzer characterizes his attorney position as similar to those attorneys to whom he compares himself, and asserts that he has been more productive "than most of the other [a]ttorneys statewide." Id. ¶ 21, at 5. He represents that he has not been promoted despite outperforming colleagues who have received promotions. See id. ¶ 25, at 5-6.

Meintzer maintains that, in or about the summer of 2002, he discovered that CSED's formula for the computation of post-judgment interest, outlined in Rule 8.50.111.12 NMAC, was inconsistent with N.M. Stat. Ann. § 40-4-7.3. See Complaint ¶ 29, at 6. Meintzer represents that, because he believed presenting a delinquency calculation based on CSED's formula constituted intentional fraud

on the court, he exercised his First Amendment rights and informed Region III County Director, Gerry Smith, that he refused to follow the policy. See id. ¶¶ 31-32, at 6. Meintzer asserts that, in response to his protestations regarding CSED's interest policy, HSD retaliated against him by assigning him the most productive CSED workers and the most complex, non-child support, federal cases. See id. ¶ 43, at 7. He also represents that his immediate supervisor, Pam Garcia, and Theresa Baca-Storey followed him to a non-CSED hearing, and submitted false reports that he represented a client contrary to an order that Regional Office Manager, Thomas Spahr, had given prohibiting outside representation. See id. ¶ 48, at 8.

On December 9, 2002, Regional Office Manager, Larry Trujillo, and Smith presented Meintzer with a Notice of Contemplated Action alleging outside employment, insubordination, and falsifying timesheets. See id. ¶¶ 50-51, at 8. Meintzer expressed his opinion that HSD's allegations in its notice were pretexts for First Amendment retaliation and discrimination in response to his refusal to follow CSED's interest calculation policy. See id. ¶ 52, at 8. At the retention hearing on January 23, 2003, Meintzer admitted he had performed outside employment for years, and maintained that he had done so with the knowledge of Spahr and of other CSED employees. See id. ¶ 54, at 8. Meintzer also requested that he be transferred, because he believed that, if he was not transferred, he would be retaliated against after being reinstated. See id. ¶ 57, at 9.

Meintzer contends that, after being reinstated in January 2003, he was subjected to a Letter of Instruction that required him to contact the Managing Attorney or the County Director whenever he left the building. See id. ¶ 59, at 9-10. Meintzer states that, when he learned that other similarly situated employees were not subject to the same protocol, he informed the County Director that he would not comply with the instructions. See id. ¶ 62, at 10. Meintzer also contends that, after his

reinstatement, he was once again assigned the heaviest caseload among the attorneys in Albuquerque at Region III.  See id. ¶ 63, at 10.

Meintzer states that, on or about August 22, 2003, he applied for a position as CSED General Counsel, an Attorney A position in Albuquerque, and for a Managing Attorney position in Las Cruces, New Mexico.  See id. ¶ 69, at 10.  Meintzer represents that he was subsequently interviewed at a meeting, which he understood to be for all three positions, but that he was only asked questions regarding the CSED General Counsel position.  See id. ¶¶ 70, 72-73, at 10-11.  The CSED General Counsel position was awarded to Lila Bird, a female candidate whom, upon information and belief, Meintzer notes to be younger and less experienced than himself.  See id. ¶¶ 74-75, at 11.

At approximately the same time, Meintzer requested and was granted leave to cope with stress issues related to CSED's alleged retaliation against him.  See id. ¶ 78, at 11.  When he returned from this leave, HSD Chief Counsel, Paul Ritzma, notified Meintzer that he was going to be promoted to the Attorney A position in Albuquerque, but allegedly stated that "[Meintzer] was going to have to work extremely hard to prove all of the people wrong who did not think that [Meintzer] deserved the promotion."  Id. ¶¶ 79-80, at 11-12.  Because of this statement, his perception that he was not asked any questions regarding the Attorney A position at his interview, and "office rumors" suggesting that there may have been improprieties in the interview process, Meintzer refused the promotion.  Id. ¶¶ 83-86, at 12.  The Attorney A position was awarded to Jan Schoenhaus, an attorney that Meintzer describes as younger, less experienced, and less productive than himself.  See id. ¶¶ 87-88, at 12.

On or about March 12, 2004, Meintzer met with Garcia, Bird, and Ritzma to discuss his perception that caseloads within Region III were disproportionately distributed; during this meeting,

-4-

Meintzer also expressed his concern that Garcia could not objectively perform his evaluations and effectively supervise his work without retaliating against him.  See id. ¶¶ 93-95, at 13.  Meintzer states that, although his request that a manager other than Garcia supervise him was refused, Ritzma promised at the March 12, 2004 meeting that Meintzer would receive a raise to bring his salary in line with some newly hired attorneys who were in fact making more money than Meintzer.  See id. ¶¶ 96-97, at 13.  On April 9, 2004, Meintzer sent an e-mail to HSD Secretary Pamela Hyde and to the Governor's Chief of Staff, Richard Guay, indicating that his workload had not been reduced, that he had not received the promised raise, and alleging that Ritzma had been dishonest during the March 12, 2004 meeting.  See id. ¶ 103, at 14.

In July 2004, Meintzer applied for a new Attorney O position, because he had still not received the raise Ritzma had promised him and new Attorney O's were being hired at wages above his.  See id. ¶ 107, at 14.  Bird informed Meintzer that he would not be interviewed for an Attorney O position, because it would constitute a lateral transfer.  See id. ¶ 108, at 14.

In January 2005, Meintzer interviewed for two Attorney A positions that had become available in Albuquerque.  See id. ¶ 111, at 14.  Ritzma notified Meintzer that he was not selected for either Attorney A position, and that Ritzma had selected Rachelle Klump and Stephen Klump, a married couple, for the two positions.  See id. ¶¶ 115, 120, at 15.  Meintzer states that each of the Klumps is younger and less experienced than himself.  See id. ¶ 121, at 15.  Shortly after notifying Meintzer that the Klumps had been selected, Meintzer states that Ritzma canceled both promotions, because one of the attorneys expected to vacate an Albuquerque Attorney A position decided to remain in her position.  See id. ¶ 123, at 16.

On May 12, 2005, after Meintzer filed a discrimination claim with the Equal Employment

Opportunity Commission ("EEOC"), Meintzer and Ritzma reached a mediated settlement agreement. See id. ¶ 128, at 16.  The agreement stated that Meintzer was to receive an equity raise to the mid-point for his position and that Ritzma would not take any adverse employment actions against Meintzer.  See id. ¶¶ 129, 132, at 16.  Meintzer asserts that he may not have received a raise to the appropriate level and that Ritzma took an adverse employment action when he appointed Robert Thomas to an open Region VII Attorney A position without following the interview process that department policy mandated.  See id. ¶¶ 129, 133, at 16-17.  Meintzer contends that Ritzma appointed Thomas, an attorney slightly older than Meintzer, in an attempt to mitigate Meintzer's anticipated age discrimination claim.  See id. ¶ 141, at 17.

Meintzer contends that, in July 2006, Ritzma reassigned the two vacant Albuquerque Attorney A positions to the Las Vegas, New Mexico and Los Lunas, New Mexico offices and demoted the Los Lunas position to an Attorney O position.  See id. ¶¶ 154, 159, at 19.  Five months later, Ritzma created or transferred two new Attorney A positions -- one to the Los Lunas office and another to the Alamagordo, New Mexico office.  See id. ¶ 161, at 20.  Meintzer argues that not filling Attorney A positions in the Albuquerque office constitutes an adverse employment action. See id. ¶ 167, at 20.

## 2. **Administrative Remedies.**

Meintzer states that he has filed at least four administrative claims for relief from discrimination and retaliation with the EEOC: (i) a claim alleging discrimination and retaliation, filed on June 5, 2003, see id. ¶ 68, at 10; (ii) a claim alleging retaliation, inequitable workload, age discrimination, and failure to promote, filed sometime between January and May 2005, see id. ¶ 127, at 16; (iii) a claim alleging intentional retaliation, filed sometime between May 2005 and July 2006,

see id. ¶¶ 150-151, at 18; and (iv) a claim alleging discrimination and retaliation, filed on February 12, 2007, see Motion to Amend ¶ 2, at 1. Meintzer contends that he has now fully exhausted the administrative remedies for the complaints he filed in association with the factual allegations that he alleges in his Complaint. See Plaintiff's Response to Defendant's Motion to Dismiss and Memorandum in Support of the Same ¶¶ 3-4, at 1, filed March 15, 2007 (Doc. 15)("Meintzer's Response").

On February 13, 2007, Meintzer was served a Notice of Contemplated Action by hand delivery. See Defendant's Response to Plaintiff's Emergency Motion for Temporary Injunction Restraining Order Time is of the Essence, filed February 28, 2007 (Doc. 7)("HSD's TRO Response"). The Notice alleges that Meintzer inappropriately used state property and resources for personal gain, and that he falsified timesheets. See HSD's TRO Response, Exhibit 1, Letter from Paul Ritzma and Corinne Jameson to Ed R. Meintzer (dated February 13, 2007)("Notice of Contemplated Action"). Among other charges, the Notice of Contemplated Action charges that Meintzer repeatedly used his state-provided Westlaw account to conduct legal research unrelated to his job duties. See id. at 3-6. Meintzer admits that he used Westlaw, but argues that he "used it to defend [himself] against intentional violations of [his] civil rights." Transcript of Hearing at 8:4-6 (Meintzer)(taken May 21, 2007)("Transcript").[1] Meintzer also admits that he has engaged in outside legal employment, but contends that he did so with the knowledge of his supervisors. See Transcript of Hearing at 7:21-23 (Meintzer)(taken March 1, 2007).

In addition to serving Meintzer the Notice of Contemplated Action, HSD also placed him on

---

[1]The Court's citations to the transcript of the hearing refer to the Court Reporter's original, unedited version. Any final transcript may contain slightly different page and/or line numbers.

administrative leave with pay.  See HSD's TRO Response, Exhibit 2, Letter from Corinne Jameson to Ed Meintzer (dated February 13, 2007).  Meintzer was instructed not to enter HSD property, not to have contact with any HSD employees at any time either during or after work hours, and to surrender his office keys, HSD identification badge, and other department property.  See id. Meintzer states that an administrative retention hearing associated with the charges contained in the Notice of Contemplated Action is scheduled to take place in July 2007.  See Transcript at 18:23-25 (Meintzer).  Meintzer informs the Court that he has not yet filed an administrative complaint or taken any administrative action in response to the most recent charges contained in the Notice of Contemplated Action.  See Transcript at 9:19-23 (Meintzer).

## PROCEDURAL BACKGROUND

Meintzer filed his Complaint against HSD on February 15, 2007.  On March 13, 2007, HSD filed its motion to dismiss asserting that the Eleventh Amendment bars Meintzer's claims and that Meintzer has failed to exhaust his administrative remedies.  In its written memorandum in support of its motion, HSD indicated that, should Meintzer provide it a copy of a right-to-sue letter from the EEOC, it may withdraw its objection to his Complaint to the extent that the objection is based on Meintzer's failure to exhaust his administrative remedies.  See Memorandum in Support of Defendant State of New Mexico Human Services Department's Motion to Dismiss Based on Eleventh Amendment Immunity and Failure to Exhaust Administrative Remedies at 7 n.2, filed March 13, 2007 (Doc. 13)("HSD's Memorandum").  Meintzer states that he sent HSD a copy of his right-to-sue letter via telefacsimile on March 13, 2007.  See Plaintiff's Response to Defendant's Motion to Dismiss and Memorandum in Support of the Same ¶ 3, at 1, filed March 15, 2007 (Doc. 15)("Meintzer's Response").  At the hearing on this motion, HSD's counsel indicated that Meintzer

-8-

had provided HSD with a copy of a right-to-sue letter for Meintzer's Title VII claims. <u>See</u> Transcript at 3:25-4:2 (Walz).

Meintzer filed his motion to amend his Complaint on March 15, 2007. In his Motion to Amend, Meintzer indicated that he planned to name a number of individuals as defendants in this lawsuit. <u>See</u> Motion to Amend ¶ 3, at 1. Meintzer asserted that the individuals to be named "conspired to violate [his] civil rights or did not prevent the same." <u>Id.</u> On April 9, 2007, however, Meintzer withdrew his Motion to Amend. <u>See</u> Notice of Withdrawal of Plaintiff's Motion to Amend Complaint Filed 3-15-07, filed April 9, 2007 (Doc. 18). Nevertheless, at the May 21, 2007 hearing, Meintzer stated that he still intended to amend his Complaint to name individual defendants and, possibly, to add claims associated with the issuance of the Notice of Contemplated Action and his subsequent retention hearing. <u>See</u> Transcript at 15:15-23; 16:22-17:4 (Meintzer). Meintzer informed the Court that he wished to preserve his right to amend his Complaint until some time after the completion of his July 2007 administrative hearing. <u>See id.</u> at 16:7-9 (Meintzer).

Meintzer opposes HSD's motion to dismiss. In his Response to HSD's motion, Meintzer requests that the Court: (i) deny HSD's motion; (ii) award Meintzer pro se attorney's fees associated with responding to HSD's motion; and (iii) provide any other relief the Court deems appropriate. <u>See</u> Meintzer's Response at 2.

## STANDARDS FOR DECIDING A MOTION TO DISMISS

In considering a motion to dismiss a complaint for failure to state a claim under rule 12(b)(6), a court must accept as true all factual allegations in the complaint and must draw all reasonable inferences in the plaintiff's favor. <u>See</u> <u>Hall v. Bellmon</u>, 935 F.2d 1106, 1109 (10th Cir. 1991). Where it appears beyond doubt that a plaintiff cannot prove any set of facts that would entitle him

to relief, a court may dismiss the cause of action.  See Jojola v. Chavez, 55 F.3d 488, 490 (10th Cir. 1995).  The issue is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to offer evidence to support his claim.  See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).

## LAW REGARDING ELEVENTH AMENDMENT IMMUNITY

The Eleventh Amendment prohibits federal courts from exercising jurisdiction over any suit in law or equity against a state.  See U.S. Const. amend XI ("The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."). The Supreme Court of the United States has interpreted the Eleventh Amendment to provide immunity against suits brought without the State's consent by both citizens of another state and citizens of the state being sued.  See Tennessee v. Lane, 541 U.S. 509, 517 (2004).  The extent of Eleventh Amendment immunity is not unlimited, however, and Congress may, under certain conditions, abrogate a state's immunity.  See Kimel v. Fla. Bd. of Regents, 528 U.S. 62, 73 (2000). To determine whether Congress has properly abrogated a state's immunity, the court must first resolve two predicate questions: (i) has Congress unequivocally expressed its intent to abrogate immunity; and (ii) if so, has Congress acted pursuant to a valid grant of constitutional authority.  See Tennessee v. Lane, 541 U.S. at 517.

The Supreme Court has held that Congress may properly abrogate states' Eleventh Amendment immunity when it acts "pursuant to a valid exercise of its power under § 5 of the Fourteenth Amendment to enforce the substantive guarantees of that Amendment."  Id. at 518.  See Guttman v. G.T.S. Khalsa, 446 F.3d 1027, 1034 n.4 (10th Cir. 2006).  In section 5, "Congress is expressly granted authority to enforce 'by appropriate legislation' the substantive provisions of the

Fourteenth Amendment, which themselves embody significant limitations on state authority." Fitzpatrick v. Bitzer, 427 U.S. 445, 456 (1976).  Accordingly, "Congress may, in determining what is 'appropriate legislation' for the purpose of enforcing the provisions of the Fourteenth Amendment, provide for private suits against States or state officials which are constitutionally impermissible in other contexts."  Id.

## ANALYSIS

Although Meintzer's Complaint makes reference to violations of various federal and state statutes -- it refers to 42 U.S.C. §§ 1983, 1985, 1986, 1988 and 2000e-3, and N.M. Stat. Ann. § 28-1-7(I)(1)-(3), see Complaint ¶¶ 158, 177, at 19, 22 -- the Complaint does not specifically contain any sections related to jurisdiction or explain on what jurisdictional basis Meintzer relies.  Meintzer alleges, however, that he has been the victim of sex, race, age, and retaliatory discrimination "almost from the time [he] arrived at CSED."  Id. ¶ 3, at 1.  The Court notes that, for the purposes of deciding a motion to dismiss, the Court must accept Meintzer's allegations as true.  The Court has carefully reviewed Meintzer's Complaint to determine the statutory basis of his claims and believes that, liberally construed, his pleadings articulate claims that may be cognizable in federal court under the statutes to which Meintzer refers.

HSD contends that, regardless whether Meintzer has stated cognizable claims, because HSD is a state entity, the Eleventh Amendment bars those claims.  HSD argues in the alternative that, to the extent that any of Meintzer's claims are not barred, the Court should dismiss them at this time, because Meintzer has failed to exhaust his administrative remedies.  The Court concludes that some of Meintzer's claims are barred as a matter of law, but that some claims survive.

-11-

I.     **THE ELEVENTH AMENDMENT BARS MEINTZER'S CONSTITUTIONAL
       <u>CLAIMS AGAINST HSD.</u>**

  HSD argues that, because it is a state entity, sovereign immunity bars Meintzer's claims.  <u>See</u>

HSD's Memorandum at 4-6.   The Court agrees that, to the extent that Meintzer's claims are

premised on 42 U.S.C. §§ 1983, 1985, and/or 1986, the Eleventh Amendment bars those claims. <u>See</u>

<u>Will v. Mich. Dep't of State Police</u>, 491 U.S. 58, 66 (1989)("Section 1983 provides a federal forum

to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants

who seek a remedy against a State for alleged deprivations of civil liberties."); <u>Buck v. Utah Labor</u>

<u>Comm'n</u>, 73 Fed. Appx. 345, 347 (10th Cir. 2003)("Congress did not abrogate the states' Eleventh

Amendment immunity when it enacted 42 U.S.C. § 1985.")(citing <u>Ellis v. Univ. of Kan. Med. Ctr.</u>,

163 F.3d 1186, 1196 (10th Cir. 1998)); <u>Seibert v. Oklahoma</u>, 867 F.2d 591, 594 (10th Cir.

1989)("The Supreme Court expressly has held that the eleventh amendment prohibits damage suits

against states under section 1983.  We see no reason why the Supreme Court's reasoning and holding

should not apply with equal force to plaintiff's civil rights claims under section 1985 (conspiracy)

and section 1986 (failure to prevent conspiracy violations)(internal citations omitted)).   At the

hearing on this motion, Meintzer admitted that the State of New Mexico retains its immunity against

these claims to enforce constitutional rights.  <u>See</u> Transcript at 10:10-12 (Meintzer).

  To the extent that Meintzer's Complaint raises a cause of action under Title VII of the Civil

Rights Act of 1964, 42 U.S.C. §§ 2000e-2000e-17, Congress has abrogated the State's sovereign

immunity pursuant to its power under section five of the Fourteenth Amendment, and HSD is a

proper party.  <u>See</u> <u>Fitzpatrick v. Bitzer</u>, 427 U.S. 445, 448-49 (1976)(holding Title VII authorizes

federal courts to award money damages and attorneys' fees in favor of a private individual against

a state government found to have subjected him to employment discrimination on the basis of race, color, religion, sex or national origin); Crumpacker v. Kan. Dep't of Human Res., 338 F.3d 1163, 1170 (10th Cir. 2003)(holding Congress properly exercised its abrogation power in enacting Title VII's prohibition against discriminatory retaliation). Meintzer has referenced 42 U.S.C. § 2000e-3 in his Complaint, see Complaint ¶ 158, at 19, and the Court believes that his pleadings allege discriminatory and retaliatory conduct that may be cognizable under Title VII. At the hearing on this motion, HSD's counsel conceded that the Supreme Court's holding in Fitzpatrick v. Bitzer was binding on the Court and agreed that, to the extent that Meintzer's Complaint can be construed to raise a claim under Title VII, the Court could not dismiss Meintzer's claim on Eleventh Amendment grounds. See Transcript at 5:4-9 (Walz).

Meintzer suggests that HSD's conduct was discriminatory on the basis of age, sex, and race, and that he was subject to retaliatory conduct. Accordingly, the allegations in Meintzer's pleadings may be broader than the scope of the remedy Title VII provides, because Title VII does not create a cause of action for age discrimination. See 42 U.S.C. §§ 2000e-2000e-17. Although Congress has authorized a federal cause of action for age discrimination under the Age Discrimination in Employment Act, 29 U.S.C. §§ 621-634 ("ADEA"), the Supreme Court has held that the Eleventh Amendment precludes claims under the ADEA against states in federal court. See Kimel v. Fla. Bd. of Regents, 528 U.S. at 82-83 (holding that the ADEA is not appropriate legislation under section five of the Fourteenth Amendment and therefore is not a legitimate Congressional abrogation of the States' sovereign immunity); Dixon v. Regents of the Univ. of N.M., No. 99-2245, 2000 U.S. App. LEXIS 25139, at **7-8 (10th Cir. Oct. 6, 2000).

Meintzer acknowledges that, consistent with the Supreme Court's decision in Kimel v. Fla.

Bd. of Regents, the Eleventh Amendment bars an age discrimination claim against HSD under the

ADEA.  See Plaintiff's Surreply and Supporting Authority to Defendant's Reply in Support of its

Motion to Dismiss ¶ 13, at 5, filed May 3, 2007 (Doc. 24);[2] Transcript at 10:14-16 (Meintzer).

Meintzer argues, however, that he retains an age discrimination claim under the New Mexico Human

Rights Act, N.M. Stat. Ann. § 28-1-1 to -15 ("HRA"), and that the Court has supplemental

jurisdiction over that claim.  See Transcript at 10:20-22 (Meintzer).  The Supreme Court of New

Mexico has observed that the HRA provides victims of age discrimination a cause of action for

damages against the state.  See Gill v. Pub. Employees Ret. Bd., 2004-NMSC-016, ¶ 30, 90 P.3d

491, 501.  Accordingly, taking into consideration the remedial nature of the statutes at issue, in the

interest of reading the pleadings liberally so that Meintzer's cause of action can be decided on its

merits rather than on a procedural technicality, and because the Court believes that Meintzer's

Complaint put HSD on notice that it would have to defend against an age discrimination claim, the

Court will interpret the Complaint to contain a claim for age discrimination under the HRA.

The Court concludes that the Eleventh Amendment bars Meintzer's claims against HSD

brought under 42 U.S.C. §§ 1983, 1985, and/or 1986.  The Court will not, at this time, foreclose

Meintzer from amending his Complaint in the future to name defendants against whom those claims

might be sustained, but it will dismiss all such claims against HSD.  To the extent that Meintzer's

Complaint raises claims under Title VII for discrimination based on sex, on race, or for retaliatory

discrimination, the Supreme Court has determined that the Eleventh Amendment does not preclude

---

[2]Pursuant to rule 7.6(b) of the Court's local rules, "the filing of a surreply requires leave of the Court."  D.N.M. L.R.-Civ. 7.6(b).  Meintzer did not seek, and the Court did not grant, leave to file this surreply.  Nevertheless, because Meintzer is proceeding pro se, and because the Court's reliance on the surreply is limited to Meintzer's concession of legal propositions, the Court has read and considered the surreply.

those claims, and the Court will not dismiss those at this time.  To the extent that Meintzer's cause of action can be construed to contain a claim for age discrimination under the ADEA, the Eleventh Amendment bars that claim against HSD and the Court will dismiss that claim.  To the extent that Meintzer's cause of action can be construed to contain a claim for age discrimination under the HRA, the Supreme Court of New Mexico has noted that the State of New Mexico has waived its immunity to such claims, and therefore the Court will not dismiss that claim at this time.  The Court notes that, at the hearing on this motion, HSD's counsel indicated that he agreed with the Court's rulings on HSD's Eleventh Amendment immunity.  <u>See</u> Transcript at 19:23 (Walz).

## II.   THE COURT WILL NOT, AT THIS TIME, DISMISS MEINTZER'S REMAINING CLAIMS FOR FAILURE TO EXHAUST HIS ADMINISTRATIVE REMEDIES.

In its written motion, HSD contended that, if the Court disagreed that the Eleventh Amendment bars all of Meintzer's claims, the Court should dismiss Meintzer's remaining claims for failure to exhaust his administrative remedies before filing his action.  HSD indicated, however, that, should Meintzer provide it a copy of a right-to-sue letter from the EEOC, it may withdraw its objection to his Complaint to the extent that the objection is based on Meintzer's failure to exhaust his administrative remedies.  <u>See</u> HSD's Memorandum at 7 n.2.  HSD acknowledges that Meintzer has now provided it with a copy of his right-to-sue letter for his Title VII claims.  <u>See</u> Transcript at 3:25-4:2 (Walz).

At the hearing on these motions, HSD's counsel indicated that, in light of having received a copy of Meintzer's letter, the parties would need to engage in some limited discovery to determine whether any exhaustion still applies, the scope of the right the letter grants Meintzer, and to assess the viability of Meintzer's Title VII claim.  <u>See</u> <u>id.</u> at 5:14-21 (Walz).  HSD's counsel states that,

after that discovery, the parties can determine if additional pre-trial motion practice is appropriate. See id. at 6:1-3 (Walz).  Meintzer also acknowledged that he has an administrative hearing associated with his receipt of HSD's Notice of Contemplated Action scheduled for July 2007, see id. at 18:23-24 (Meintzer), and stated that, depending on the outcome of that hearing, he may need to pursue additional administrative remedies, see id. at 7:20-24 (Meintzer).

The Court believes that, based on the parties' representations at the hearing, it should proceed with this matter and begin to schedule discovery in this case.  Specifically, the Court believes that this course of action will be in the best interest of both parties, because it will allow the parties to begin a dialogue about the discovery that is necessary, and it may clarify the administrative remedies that remain to be pursued and the scope of the right-to-sue letter that the EEOC has granted Meintzer.  Accordingly, the Court has entered an Initial Scheduling Order in this case.  See Initial Scheduling Order, filed May 21, 2006 (Doc. 27).  Pursuant to the Initial Scheduling Order, the Court has scheduled a rule 16 scheduling conference on June 25, 2007.  See id. at 2.  The Court will not impose any deadlines at this time for Meintzer to amend his Complaint.  Should Meintzer wish to amend his Complaint in the future, he will need to comply with any deadlines set at the upcoming rule 16 scheduling conference or, if necessary, move the Court for leave to do so in accordance with the Federal Rules of Civil Procedure.

**IT IS ORDERED** that Defendant State of New Mexico Human Services Department's Motion to Dismiss Based on Eleventh Amendment Immunity and Failure to Exhaust Administrative Remedies is granted in part and denied in part.  To the extent that Meintzer's Complaint raises claims against HSD under 42 U.S.C. §§ 1983, 1985, and/or 1986, the Court will dismiss those claims.  To the extent that Meintzer's Complaint raises claims under Title VII for discrimination

based on sex or race or for retaliatory discrimination, the Court will not dismiss those claims at this time.  To the extent that Meintzer's Complaint raises a claim for age discrimination under the ADEA, the Court will dismiss that claim.  To the extent that Meintzer's cause of action can be construed to contain a claim for age discrimination under the HRA, the Court will not dismiss that claim at this time.  HSD's request that the Court dismiss the remaining statutory claims for failure to exhaust administrative remedies is dismissed without prejudice to renewing the motion after discovery and after Meintzer determines whether he needs to file more administrative claims.


_____
UNITED STATES DISTRICT JUDGE


Counsel:

Ed Meintzer
Albuquerque, New Mexico

        *Plaintiff Pro Se*

Jerry A. Walz
Walz and Associates
Cedar Crest, New Mexico

        *Attorneys for the Defendant*


-17-